**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

NICOLE GRANT, a/k/a Nicole Jones,

*Defendant-Appellant.*

No. 12-4037

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Arenda Wright Allen, District Judge.
(2:10-cr-00014-AWA-DEM-1)

Argued: January 29, 2013

Decided: May 9, 2013

Before TRAXLER, Chief Judge, and GREGORY and
SHEDD, Circuit Judges.

Vacated by published opinion. Chief Judge Traxler wrote the
opinion, in which Judge Gregory joined. Judge Shedd wrote
a separate concurring opinion.

## COUNSEL

**ARGUED:** Patrick L. Bryant, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.
Robert John Krask, OFFICE OF THE UNITED STATES

ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, Keith Loren Kimball, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

---

## OPINION

TRAXLER, Chief Judge:

Nicole Grant appeals a district court order adding to her previously imposed sentence a new requirement that she apply all tax refunds and other money she receives from any "anticipated or unexpected financial gains" toward an outstanding restitution obligation imposed on her as part of her sentence for the crime of theft of government property. Concluding that the district court abused its discretion by later amending the original sentence in the absence of evidence of the impact the amendment would have on Grant's ability to support herself and her family, we vacate the order.

I.

Insofar as this appeal pertains to the law of criminal restitution and conditions of probation, we begin our discussion with some brief background in those areas.

Although restitution has deep common law roots, it was only in the Victim and Witness Protection Act of 1982, ("VWPA") Pub. L. No. 97-291, 96 Stat. 1248 (1982), "that Congress first gave the federal district courts general statutory authority to order restitution as part of a criminal sentence outside of the probation context." *United States v. Amato*, 540 F.3d 153, 159 (2d Cir. 2008); *see* S. Rep. No. 97-532, at 30

(1982), *reprinted in* 1982 U.S.C.C.A.N. 2515, 2536. Thirteen years later, Congress passed the Mandatory Victims Restitution Act of 1996 ("MVRA") as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title II, Subtitle A, 110 Stat. 1214. The legislation's stated purpose was to ensure that offenders realized the damage they caused with their criminal actions and make the victims whole. *See* S. Rep. 104-179, at 12 (1995), *reprinted in* 1996 U.S.C.C.A.N. 924; *see also Dolan v. United States*, 130 S. Ct. 2533, 2539 (2010) (noting that the MVRA "seeks primarily to assure that victims of a crime receive full restitution"). The MVRA also served to "replace an existing patchwork of different rules governing orders of restitution under various Federal criminal statutes with one consistent procedure." S. Rep. 104-179, at 12 (1995), *reprinted in* 1996 U.S.C.C.A.N. 924.

Under the MVRA, for any defendant convicted of certain enumerated offense categories, including, as is relevant here, offenses against property, the sentencing court is required to order the defendant to pay restitution in accordance with 18 U.S.C. § 3664. *See* 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii), (d). Pursuant to that section, a sentencing court must "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." *Id.* § 3664(f)(1)(A). However, upon determining the total restitution amount owed to each victim, the district court must,

> pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—
>
> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
>
> (B) projected earnings and other income of the defendant; and

(C) any financial obligations of the defendant; including obligations to dependents.

*Id.* § 3664(f)(2).[1] If the restitution order requires payment over time, the time must be "the shortest . . . in which full payment can reasonably be made." *Id.* § 3572(d)(2).

The MVRA also requires that the restitution order "provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." *Id.* § 3664(k). Once the victim or victims owed restitution are also notified, and the court finds that a material change has indeed occurred, the court is authorized to adjust the payment schedule "as the interests of justice require." *Id.*; *see Cani v. United States*, 331 F.3d 1210, 1215 (11th Cir. 2003).

An order to pay restitution is a part of a criminal sentence. *See United States v. Cohen*, 459 F.3d 490, 496 (4th Cir. 2006). Additionally, however, under the MVRA, the sentencing court must make compliance with the restitution order a condition of any probation sentence. *See* 18 U.S.C. § 3563(a)(6)(A). There are certain conditions other than the payment of restitution that the sentencing court must place on any probation sentence, *see id.* § 3563(a), and sentencing courts have discretion to add still more conditions of the court's choosing "to the extent that [they] are reasonably

---

[1]Sentencing courts require the probation officer to provide the information needed by the district court regarding the losses to each victim, the amount of restitution owed under a plea agreement, and information regarding the defendant's economic circumstances. *See* 18 U.S.C. § 3664(a). This information is then disclosed to both the defendant and the government. *See id.* § 3664(b). The defendant also must file with the probation officer an affidavit describing her financial resources, including a listing of all assets she owned or controlled on the date of her arrest; her financial needs and earning ability as well as that of her dependents; and other information that the court might request. *See id.* § 3664(d)(3).

related to the factors set forth in section 3553(a)(1) and (a)(2) and . . . involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2)," *id.* § 3563(b). After imposition of the initial conditions of a probation are set, "[t]he court may modify, reduce, or enlarge [those] conditions . . . at any time prior to the expiration or termination of the term of probation, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the conditions of probation." *Id.* § 3563(c).

With this general background, we now turn to the facts of this case. In 2009, Grant was indicted and pled guilty in the Northern District of Florida on one count of theft of government property in excess of $1,000, *see* 18 U.S.C. § 641, as a result of her receipt of Supplementary Security Income ("SSI") from the Social Security Administration ("SSA") after her eligibility for such payments had ended. Grant had been receiving the money on behalf of her special-needs daughter but failed to notify the government when she subsequently married and her husband's income made her ineligible for SSI.

Grant's presentence report ("PSR") outlined her financial circumstances relating to her ability to pay fines and restitution. According to the report, her monthly income at the time of sentencing was $2,795.00 (including $1,865.00 in spousal income and support for her two children and $930 in estimated net salary) and her monthly expenses were $2,533.75, yielding a net monthly cash flow of $261.25. Her expenses included her payments on a debt of $807 owed to her cellular telephone company, as well as $17,016 in credit card debt and a $22,100 car loan. The report further noted that she had received tax refunds of $2,722, $2,862, $600, and $3,987, respectively, for the tax years 2005, 2006, 2007, and 2008. In light of Grant's anticipated restitution obligation, the PSR noted it did not appear she would have the present or future

ability to pay a fine. *See* 18 U.S.C. § 3572(b) (providing that a fine should be imposed only to the extent that it would not impair the defendant's ability to fulfill her restitution obligations).

On October 28, 2009, the district court sentenced Grant to five years' probation, with six months of home confinement and a $100 special assessment, to be paid immediately. Her sentence also required her to pay $42,152 in restitution to the SSA in $250 monthly installments and to notify the court of any material changes in her economic circumstances. As is relevant here, the district court also conditioned her probation on her compliance with her restitution payment schedule and her "provid[ing] the probation office with access to all requested financial information, both business and personal, during the term of supervision." J.A. 17.

In January 2010, the district court reduced Grant's required monthly restitution payment to $125, presumably based on a showing that Grant's financial circumstances relating to her ability to pay restitution had materially worsened. Later that same month, the Florida district court transferred jurisdiction over Grant's case and supervision of her probation to the Eastern District of Virginia.

In 2010 and 2011, Grant received tax refunds for the 2009 and 2010 tax years in the approximate amounts of $2,900 and $3,300, respectively. Apparently as a result of these most recent refunds, Grant's new probation officer petitioned the district court in November 2011 to add a new special condition to Grant's probation that she must "apply monies received from income tax refunds, lottery winnings, inheritances, judgments, and any anticipated or unexpected financial gains to the outstanding court ordered financial obligations." J.A. 22. Because Grant did not consent to this change, the district court appointed counsel to represent her and set a hearing.

Grant argued that the requested condition would amount to an unauthorized amendment to her sentence. She particularly emphasized that the additional burden would be unwarranted in light of the fact that the financial circumstances affecting her ability to pay restitution had not materially improved. The government countered that district courts have broad authority to modify probation conditions and that the condition sought served the goals of sentencing, as it would reduce "the likelihood of a substantial shortfall in restitution." J.A. 31. On the issue of Grant's financial circumstances, the government argued that Grant's "receipt of an annual windfall [the tax refunds] arguably qualifies as a material change." J.A. 33. The government did not assert that Grant could afford to pay her tax refunds and other financial gains but nonetheless suggested that the court should add the condition and make further adjustments in Grant's restitution obligations at some later time if the court determined Grant could not satisfy all of her restitution obligations and still support her family.

The district court agreed at the hearing with the government that adoption of the special condition would not be an unauthorized amendment to the sentence. Addressing Grant, the court stated,

> I do empathize with you and your children and your husband and your daycare in your house and your needs to use your tax refund for your family but unfortunately those are all mitigation factors that [defense counsel] listed out that you should have thought about before you committed the crime down in Florida.

J.A. 47. Without deciding there had been any material change in Grant's ability to pay restitution since her monthly obligation was reduced to $125, the district court nonetheless ruled that the requested special condition was proper and ordered that Grant comply with it. In a written order, the district court explicitly noted its detailed consideration of

the factors set forth in 18 U.S.C. § 3553(a), 18 U.S.C. § 3563(c), the Federal Rules of Criminal Procedure, the spirit and intent of 18 U.S.C. § 3664(k) (regardless of that statute's direct applicability), the arguments and law presented at the Show Cause Hearing on December 20, 2011, the interests of justice and fundamental fairness, and the undisputed circumstances presented in this case.

J.A. 52.

## II.

Grant contends that the district court erred in increasing her restitution obligation when there was no evidence that there had been any material change in her ability to pay. Grant also argues that even if there are circumstances under which a district court can increase a defendant's restitution obligation without showing a material change in her ability to pay, the court abused its discretion by imposing the special condition in the absence of evidence that Grant would be financially able to comply with it.

We review questions of statutory interpretation *de novo*. *See EEOC v. Great Steaks, Inc.*, 667 F.3d 510, 519 (4th Cir. 2012). However, we review the district court's decision whether to modify Grant's conditions of probation for abuse of discretion. *See United States v. Johnson*, 892 F.2d 369, 371-72 (4th Cir. 1989). And, "[d]iscretion in ordering restitution is circumscribed by the procedural and substantive protections of the statute authorizing restitution." *United States v. Leftwich*, 628 F.3d 665, 667 (4th Cir. 2010) (internal quotation marks omitted). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007).

As we have explained, the scheme Congress has set up regarding the issuance and modification of criminal restitution orders is detailed and extensive. Indeed, the MVRA specifically addresses the finality of sentences that include a restitution order:

> A sentence that imposes an order of restitution is a final judgment notwithstanding the fact that —
>
> > (1) such a sentence can subsequently be —
> >
> > > (A) corrected under Rule 35 of the Federal Rules of Criminal Procedure and section 3742 of chapter 235 of this title;
> > >
> > > (B) appealed and modified under section 3742;
> > >
> > > (C) amended under subsection (d)(5); or
> > >
> > > (D) adjusted under section 3664(k), 3572, or 3613A; or
> >
> > (2) the defendant may be resentenced under section 3565 or 3614.

18 U.S.C. § 3664(*o*).

None of these enumerated exceptions apply here. Rule 35 allows correction of a sentence within 14 days of its imposition when an error "resulted from arithmetical, technical, or other clear error" or modification of a sentence for the defendant's substantial assistance to the government. 18 U.S.C. § 3742 concerns an appeal of a sentence. 18 U.S.C. § 3664(d)(5) pertains to victim losses that the district court

cannot ascertain at the sentencing hearing. 18 U.S.C. § 3572 concerns adjustment of payment of fines. 18 U.S.C. §§ 3613A and 3614 concern a defendant's default on a payment of a fine or restitution. And, 18 U.S.C. § 3565 pertains to a defendant's violation of her probation. Only 18 U.S.C. § 3664(k), concerning a material change in the defendant's ability to pay restitution, is arguably relevant. However, the only change the government alleged here was Grant's "receipt of an annual windfall," J.A. 33, namely, her tax refunds. Yet, in light of the fact that at the time the Florida district court set her initial restitution payment and later reduced it Grant had received refunds for each of the four prior tax years — most recently for $3,987 — her receipt of refunds in the approximate amounts of $2,900 and $3,300 could not be considered a material improvement. And, of course, the district court did not find that it was.

In the face of § 3664(*o*)'s seemingly comprehensive language, the government nonetheless maintains that, when payment of restitution is made a condition of probation, a district court may increase the rate at which a defendant is required to pay as a condition of his probation even if none of § 3664(*o*)'s enumerated exceptions apply. The government specifically relies on the authority granted to district courts by 18 U.S.C. § 3563(c) to "modify, reduce, or enlarge [probation conditions] at any time prior to the expiration or termination of the term of probation, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the conditions of probation." 18 U.S.C. § 3563(c).

We are extremely skeptical that Congress intended that granting district courts the general authority to modify probation provisions would allow courts to bypass the much more specific scheme Congress created concerning modification of restitution, essentially rendering the scheme a nullity in a wide range of cases. *See Farmer v. Employment Sec. Comm'n of N.C.*, 4 F.3d 1274, 1284 (4th Cir. 1993) (discussing the

"basic principle of statutory construction that when two stat-utes are in conflict, a specific statute closely applicable to the substance of the controversy at hand controls over a more generalized provision"); *see also Botany Worsted Mills v. United States*, 278 U.S. 282, 289 (1929) ("When a statute lim-its a thing to be done in a particular mode, it includes the neg-ative of any other mode."); *United States v. Roper*, 462 F.3d 336, 338 (4th Cir. 2006) ("Because the MVRA includes one unique circumstance where district courts may reduce a man-datory order of restitution, we will not read into the statute any additional authority to remit such orders."). Indeed, by sanctioning the increase of Grant's restitution obligation out-side the context of the scheme outlined in 18 U.S.C. § 3664(*o*), the government's position is arguably in tension with one of Congress's stated purposes in enacting the MVRA, namely, to "replace an existing patchwork of differ-ent rules governing orders of restitution under various Federal criminal statutes with one consistent procedure." S. Rep. 104-179, at 12 (1995), *reprinted in* 1996 U.S.C.C.A.N. 924. Nev-ertheless, we need not decide in this case whether there are any circumstances in which a district court may modify a res-titution obligation in the context of modifying a probation condition even when none of the § 3664(*o*) exceptions apply. That is so because even assuming that there are some circum-stances under which a district court would possess such authority, the district court's adoption of the special condition in this case amounted to an abuse of discretion.

As we have noted, although the district court did not find that any of 3664(*o*)'s exceptions justified imposing the special condition, the court reasoned that imposing the condition was consistent with the "spirit and intent" of § 3664(k). J.A. 52. We conclude, however, that quite the opposite is true.

There is no question that the primary purpose of the MVRA was to ensure that victims are made whole, *see Dolan*, 130 S. Ct. at 2539, which is why the MVRA requires that the *total amount* of restitution must be determined without regard to

the defendant's financial circumstances, *see* 18 U.S.C. § 3664(f)(1)(A). However, the defendant's financial circumstances *are* relevant to the determination of the *rate* at which the restitution must be paid. The applicable statutes carefully balance the need for obtaining victim compensation with a requirement that restitution obligations be based on the defendant's ability to pay. It is for that reason that, in determining the manner of payment and the monthly payment schedule, the district court must consider the defendant's financial resources and assets and her projected income and her obligations, including those of her dependents. *See id.* § 3664(f)(2). In fact, it is not sufficient that the district court merely consider these facts; the court must actually demonstrate its consideration of them on the record. *See Leftwich*, 628 F.3d at 668; *United States v. Dawkins*, 202 F.3d 711, 716-17 (4th Cir. 2000)

After sentencing, except in the case of the enumerated exceptions that the parties agree do not apply here, the MVRA authorizes the modification of the restitution payment schedule only upon a finding by the court of a "material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." 18 U.S.C. § 3664(k); *see Cani*, 331 F.3d at 1215 (explaining that district court can modify restitution payment schedule when there is a "*bona fide* change in the defendant's financial condition"). With this limitation, Congress ensured that the rate at which a defendant would be obligated to pay restitution would remain tethered to the most current information regarding her ability to pay.

In this case, however, the district court imposed a substantial new restitution payment obligation on Grant without making any inquiry regarding what effect it would have on her and her family. The government downplays the significance of the change, noting that it is possible that Grant will not receive a tax refund this year. Despite this theoretical possibility, however, the facts of this case are that Grant has received

substantial refunds in each of the six years documented in the record. Only one of those was for less than $2,722, and assuming that Grant continued to receive refunds on the order of $3,000, the addition of the special condition would amount to an approximately 200% increase in her annual obligation, from $1,500 to $4,500.[2] Thus, certainly the district court had every reason to expect that the special condition would substantially impact Grant and her family.

The government implies that Grant's tax refunds, paid as they are in lump sums, are somehow "extra" money that she did not need to pay her family's expenses. However, the district court made no finding to that effect and nothing in the record supports that assumption. Millions of Americans living paycheck to paycheck rely on tax refunds every year to catch up on their bills and pay for or save for other one-time expenses. Nothing in the record suggests that Grant was any different.[3] In our view, the district court's decision to require Grant to pay this money toward her restitution obligation without considering whether she could do so and still meet her family's financial needs amounted to an abuse of discretion. *See Ostergren v. Cuccinelli*, 615 F.3d 263, 290 (4th Cir. 2010) ("A district court abuses its discretion when it . . . fails to consider judicially recognized factors constraining its exercise of discretion. . . ." (internal quotation marks omitted)); *cf. United States v. Bruchey*, 810 F.2d 456, 459 (4th Cir. 1987) ("It is particularly inappropriate for the burden of restitution to fall on innocent dependents, and thus concomitantly important that [the defendant's financial ability to meet his restitution obligations] be fully developed."). Indeed, a court's issuance of an order that conditions probation on the defendant's making of payments the court has no reason to believe she can make runs the risk of undermining respect for all

---

[2]Her monthly restitution payment of $125 equates to $1,500 annually.

[3]Moreover, we have no reason to assume that the Florida district court ignored Grant's prospects for receiving a tax refund when it set her restitution payment at $250 per month and later reduced it to $125 per month.

court orders. *Cf. United States v. Bailey*, 975 F.2d 1028, 1032 (4th Cir. 1992) ("A district court's failure to make a restitution order with which a defendant could possibly be expected to comply threatens respect for judicial orders generally.").

Defending the district court's decision, the government notes that the court remains free to adjust Grant's obligations at some point down the road if it became clear that Grant could not meet them.[4] However, that the issuing court stands willing to attempt, at some later time, to ameliorate the possibly harsh effects of its challenged order has no bearing on whether the challenged order was authorized in the first place. In any event, in this case, the district court had no reason to believe it would be able to remedy the potentially damaging blow that losing her tax refund could deal to Grant's ability to support her family. If Grant were forced to pay to the SSA approximately $3,000 that she needed to pay her family's expenses, even if the district court soon thereafter suspended her entire monthly $125 obligation and withdrew the new condition, it would take Grant *two years* to recoup the $3,000. What she and her children would do in the interim is not clear.

For these reasons, we vacate the district court's order imposing the special condition. *Cf. United States v. Blake*, 81 F.3d 498, 505 (4th Cir. 1996) (vacating restitution when district court "failed to make a factual determination that [defendant] could make the necessary restitution payments without undue hardship to himself or his teenage daughter"). In so doing, we are mindful of the fact that it was Grant who made the decision to commit the crime that is the genesis of her restitution violation. We also have no doubt that the district court, in imposing the special condition, was simply attempting to increase the amount of compensation that Grant's victim would receive, which was, after all, the MVRA's primary

---

[4]The government points out that the district court in fact reduced her monthly payment to $75 in April 2012.

goal. Nevertheless, the district court's authority to speed up the rate by which a defendant satisfies her restitution obligation is not boundless, and when a court imposes payment obligations that are untethered from the defendant's ability to meet those obligations, the court exceeds its authority.

## III.

In sum, in light of the fact that the district court order before us imposes a substantial additional restitution obligation on Grant without considering whether Grant had the financial ability to comply with it and still support her family, we vacate the order. Because the government has not alleged any material improvement in Grant's ability to pay restitution that would justify the special condition, we do not remand for further proceedings. Of course, nothing in our decision bars a future petition based on a material change in Grant's financial circumstances.

*VACATED*

SHEDD, Circuit Judge, concurring:

To a casual observer, our decision could easily appear odd. Nicole Grant stole approximately $42,000 from the United States. Consistent with congressional mandate, the sentencing court ordered Grant to pay restitution under a monthly payment schedule, and it made this order part of the criminal sentence and a condition of her probation.[1] Today, we hold that the district court abused its broad discretion by adding a special condition of probation that requires Grant to apply towards her restitution obligation, among other things, any

---

[1]Grant was sentenced in federal court in Florida, but jurisdiction over her case and supervision of her probation was later transferred to the Eastern District of Virginia, which entered the order now before us. Both the sentencing court and the district court below lowered Grant's monthly payments in an effort to accommodate her financial ability to pay.

future money she *may* receive in the form of an income tax refund (presumably federal or state). In practical terms, our holding means that even though Grant stole from the United States a significant amount of money, most of which she has yet to repay, the United States (*i.e.*, the victim of her crime) must refund any future excess federal income tax payment she makes so that she may use it as she wishes rather than apply it to her restitution obligation.

The district court's exercise of discretion to modify Grant's special conditions of probation in an effort to ensure that Grant meets as much of her restitution obligation as is possible is commendable, especially in view of the fact that the court otherwise appears to have been entirely accommodating regarding her financial ability to pay restitution. Nonetheless, I am constrained to agree with the majority that the district court abused its discretion under the specific facts of this case. Grant's presentence investigation report, which is part of the record, establishes that she consistently received relatively substantial income tax refunds at the time she was originally sentenced, and those refunds are comparable to the refunds she has received thereafter. The sentencing court was therefore aware of Grant's receipt of income tax refunds when it first set her restitution payment schedule, and it factored them into her ability to pay restitution.[2]

In short, Grant's annual receipt of a relatively substantial income tax refund has the outward appearance of being a financial windfall for her when compared to her normal monthly income. However, upon closer review, her income tax refunds are not windfalls in the context of her previously determined ability to pay restitution. In adding the special condition at issue here, the district court did not account for the fact that Grant's history of receiving income tax refunds

---

[2]Apparently, Grant did not bring this fact to the district court's attention during the pertinent proceedings below. Likewise, she does not mention it in her appellate brief. However, it is part of the case record.

had previously been factored into her payment schedule and, therefore, the receipt of any future income tax refunds does not represent a change in her ability to pay restitution. On this basis alone, I concur in the majority's decision to vacate the order setting the special condition.