**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-281

In re: TERRENCE LEROY WRIGHT, a/k/a Terrence Wright El,

Movant.

On Motion for Authorization to File a
Second or Successive Application.

Argued: May 12, 2016                    Decided: June 21, 2016

Before KEENAN, FLOYD, and THACKER, Circuit Judges.

Motion denied by published opinion. Judge Thacker wrote the
opinion, in which Judge Keenan and Judge Floyd joined.

**ARGUED:** Christopher Ryan Ford, MAYER BROWN LLP, Washington,
D.C., for Movant. Jess D. Mekeel, NORTH CAROLINA DEPARTMENT OF
JUSTICE, Raleigh, North Carolina, for Respondent. **ON BRIEF:** Roy
Cooper, Attorney General of North Carolina, NORTH CAROLINA
DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Respondent.

THACKER, Circuit Judge:

North Carolina state prisoner Terrence Leroy Wright moves this court for authorization to file a second or successive application for habeas corpus relief. See 28 U.S.C. § 2244(b)(3). His proposed application is styled as a "28 U.S.C. § 2241" petition and challenges the execution of his sentence, rather than the validity of his underlying conviction and sentence.

In his opening brief, Wright asks us to deny his motion as unnecessary. He claims that his proposed application properly arises under § 2241, not § 2254, and therefore, he is not required to seek authorization to file a second or successive application. In any event, Wright submits that if he is required to seek authorization, his claims are not "second or successive." We disagree on both counts and deny the motion.

I.

Factual and Procedural Background

Wright was convicted in North Carolina Superior Court of first-degree burglary and second-degree murder. On April 11, 1996, he was sentenced to 30 years of imprisonment for the burglary conviction. On February 4, 1997, he was sentenced to a

term of life imprisonment for the murder conviction.[1]  After an unsuccessful direct appeal in North Carolina, in December 1998, Wright was sent to South Carolina to face separate state criminal charges.  In March 1999, he was convicted of murder, burglary, criminal sexual conduct, and grand larceny in Charleston County, South Carolina.  Wright returned to North Carolina to serve his sentences for the crimes he committed there, and South Carolina placed a detainer on him.

After Wright exhausted his state post-conviction remedies, he filed his first federal habeas petition pursuant to § 2254 in August 2007, raising 16 claims varying from alleged double jeopardy violations to improper conduct by the trial judge.  The district court dismissed the petition as untimely.  See Wright-Bey v. N. Carolina, No. 2:07-cv-17, 2007 WL 2583400, at *1 (W.D.N.C. Sept. 7, 2007).  Wright appealed, but we denied a certificate of appealability ("COA") and dismissed the appeal.  See Wright-Bey v. N. Carolina, 268 F. App'x 266 (4th Cir. 2008).

On March 21, 2012, Wright filed another federal habeas § 2254 petition, claiming, inter alia, that North Carolina

---

[1] Although not evident from the record in this appeal, it appears Wright was also convicted of robbery with a dangerous weapon, larceny, and breaking and entering in North Carolina, and, on February 4, 1997, he was sentenced to 40 years for the robbery and 10 years for breaking and entering and larceny.  See Wright-Bey v. N. Carolina, 2:07-cv-14 (W.D.N.C. July 2, 2007), ECF No. 1-3, at *17-24.

3

lacked jurisdiction over him because he is a Moorish-American National. The district court dismissed the petition as frivolous on August 21, 2012. See Wright-El v. Jackson, No. 2:12-cv-6, 2012 WL 3614452, at *2 (W.D.N.C. Aug. 21, 2012). And again, we dismissed his appeal and declined to issue a COA. See Wright v. Jackson, 502 F. App'x 339 (4th Cir. 2013).

Wright filed yet another federal habeas petition on February 14, 2013, this time styled as a "28 U.S.C. § 2241" petition, wherein he asked the court to release his obligations under an "appearance bond." J.A. 149.[2] The district court dismissed the petition for failure to obtain authorization to file a second or successive application from this court. See Wright v. Graham Cnty. Clerk of Court, No. 2:13-cv-9 (W.D.N.C. March 25, 2013), ECF No. 3.[3]

Undeterred, on September 2, 2015, Wright filed the instant motion. He attached a proposed application setting forth the following allegations:

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this matter.

[3] It does not appear that Wright appealed this decision. But he filed a separate complaint in the United States District Court for the District of Columbia, alleging constitutional violations on the part of North and South Carolina officials. The district court construed the complaint as a habeas petition and 42 U.S.C. § 1983 action and dismissed it on May 28, 2014. See El v. North Carolina, No. 1:14-cv-908 (D.D.C. May 28, 2014), ECF Nos. 3, 4.

4

(1) Wright contends he was sentenced under North Carolina's Fair Sentencing Act ("FSA"), not the Structured Sentencing Act ("SSA") in effect at the time of his sentencing. But he claims he is nonetheless being treated as an SSA inmate, and thus, "prison and parole authorities" have not been calculating his "gain time," "merit[] time," and "good time" correctly, and he is entitled to 34 1/2 years of credit. J.A. 11-12.

(2) Wright "was told [he] can't go to honor grade" status, and therefore become eligible for parole, "because of the [South Carolina] detainer." J.A. 13. But Wright claims he cannot challenge his detainer until he is released on parole. In sum, Wright believes he should be treated as an FSA inmate, rather than an SSA inmate, because FSA inmates "were able to be paroled to wherever a detainer was pending . . . ." Id. at 14.

(3) By applying the SSA to his term of imprisonment, rather than the FSA, the "prison system" has committed an "ex post facto" violation. J.A. 15.

(4) The FSA requires that Petitioner's parole status be reviewed every year, but it is currently being reviewed every three years. He claims this treatment violates his due process and equal protection rights under the Constitution.[4]

---

[4] Wright also claims that the parole board does not "write . . . to tell [him] why they denied [him] parole," J.A. 17, and he requests that his name be changed in the official prison records to correspond with his Moorish-American identity. We decline to address these claims because they are not properly raised in a habeas petition. See Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) ("Because [petitioners'] claim[s] would [not] necessarily spell speedier release, neither lies at 'the core of habeas corpus'" (quoting Preiser v. Rodriguez, 411 U.S. 475, 489 (1973))); see also Pierre v. United States, 525 F.2d 933, 935 (5th Cir. 1976) (explaining a "suit seeking habeas corpus (Continued)

5

Therefore, Wright does not challenge the underlying state convictions that landed him in jail in the first place. Rather, he challenges only administrative rules, decisions, and procedures applied to his sentence. We have typically found such challenges to be contesting the "execution" of a sentence. See, e.g., Fontanez v. O'Brien, 807 F.3d 84, 87 (4th Cir. 2015) (finding a petitioner to be challenging the "execution of [his] sentence" where he "d[id] not seek to have [the original sentencing] order set aside"); United States v. Miller, 871 F.2d 488, 490 (4th Cir. 1989) (per curiam) (finding that a "claim for credit against a sentence" challenges the "execution of the sentence rather than the sentence itself").

## II.

### Legal Analysis

To properly rule on Wright's motion, we must decide whether a convicted state prisoner challenging the execution of his sentence is required to apply for authorization to file a second or successive habeas application. If the answer is yes, we then decide whether his habeas application is indeed second

---

relief" "cannot be utilized as a base for the review of a refusal to grant collateral administrative relief or as a springboard to adjudicate matters foreign to the question of the legality of custody").

6

or successive, and if so, whether he has met the authorization requirements. These questions require us to address the interplay among three federal statutes set forth in Title 28 of the United States Code: § 2241, § 2254, and § 2244.

A.

Is Wright Required to Seek Authorization to File a Second or Successive Habeas Application?

By way of background:

- Section 2241 bestows upon district courts the power to grant habeas corpus relief to a "prisoner" who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3).

- Section 2254 mandates that district courts "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis supplied).

- Section 2244(b), in turn, pertains to "application[s] under section 2254" and provides, "Before a second or successive application permitted by [section 2254] is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. §§ 2244(b)(2), (b)(3)(A).

Wright contends that his claims "do[] not arise under [section] 2254," but rather, "are properly brought under [section] 2241." Movant's Br. 1-2. Therefore, he contends that his petition is

7

not subject to the second-or-successive authorization requirement in § 2244(b)(3).

Almost every circuit has addressed some version of the broader question at play here -- that is, whether convicted state prisoners' petitions challenging the execution of a sentence are to be governed by § 2241 or § 2254. The majority view is that § 2241 habeas petitions from convicted state prisoners challenging the execution of a sentence are governed by § 2254. See, e.g., González-Fuentes v. Molina, 607 F.3d 864, 875-76 n.9 (1st Cir. 2010); Greene v. Tenn. Dep't of Corr., 265 F.3d 369, 371 (6th Cir. 2001); White v. Lambert, 370 F.3d 1002, 1007 (9th Cir. 2004), overruled on other grounds by Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010); Cook v. N.Y. State Div. of Parole, 321 F.3d 274, 278 (2d Cir. 2003); Medberry v. Crosby, 351 F.3d 1049, 1062 (11th Cir. 2003); Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001); Crouch v. Norris, 251 F.3d 720, 723 (8th Cir. 2001); Walker v. O'Brien, 216 F.3d 626, 633 (7th Cir. 2000); Malchi v. Thaler, 211 F.3d 953, 956 (5th Cir. 2000). The minority view is that such challenges arise under § 2241. See Hamm v. Saffle, 300 F.3d 1213, 1216 (10th Cir. 2002).

However, even though the Tenth Circuit has held that challenges to the execution of a sentence arise under § 2241, it does not necessarily follow that § 2244(b)(3) is inapplicable to those challenges. See Tyree v. Boone, 30 F. App'x 826, 827

(10th Cir. 2002) ("[Section] 2241 may not be used to evade the requirements of § 2254.") (citing Greenawalt v. Stewart, 105 F.3d 1287, 1287 (9th Cir. 1997) (holding that § 2241 could not be used to circumvent the limitation on second or successive § 2254 petitions)).

Indeed, the Tenth Circuit has held that § 2241 petitions filed by state prisoners are still subject to many of the same restrictions on § 2254 petitions. For example, that court has held that petitions from convicted state prisoners challenging the execution of their sentences are subject to the one-year statute of limitations contained in § 2244(d)(1). See Dulworth v. Evans, 442 F.3d 1265, 1267-68 (10th Cir. 2006) (petition challenging the calculation of "misconduct points" and "escape points" issued by Oklahoma jail officials); see also Dunn v. Workman, 172 F. App'x 238, 240 (10th Cir. 2006) (petition challenging the technical method by which officials scheduled concurrent sentences). And it has also recognized that a state prisoner bringing a § 2241 petition must seek a COA pursuant to 28 U.S.C. § 2253(c)(1) in order to appeal the denial of that petition. See Montez v. McKinna, 208 F.3d 862, 866, 868-69 (10th Cir. 2000).

With this backdrop in mind, we conclude that, regardless of how they are styled, federal habeas petitions of prisoners who are "in custody pursuant to the judgment of a

9

State court" should be treated as "applications under section 2254" for purposes of § 2244(b), even if they challenge the execution of a state sentence.[5]  Therefore, those petitions are subject to the second-or-successive authorization requirement set forth in § 2244(b)(3).  In reaching this decision, we are persuaded by the plain language of the statutes and the context and purpose of the Antiterrorism and Effective Death Penalty Act ("AEDPA").

1.

Plain Language

"As with any question of statutory interpretation, our analysis begins with the plain language of the statute." Jimenez v. Quarterman, 555 U.S. 113, 118 (2009).

---

[5] Heretofore, we have sent mixed messages on this issue without squarely addressing it.  In two published decisions, we entertained petitions from convicted state prisoners challenging the execution of their sentences under § 2254, but we did not explain whether doing so was appropriate.  See Waddell v. Dep't of Corr., 680 F.3d 384, 386 & n.1 (4th Cir. 2012) (exclusion of good time credits); Wade v. Robinson, 327 F.3d 328, 331 (4th Cir. 2003) (denial of parole).  We have done the same in unpublished decisions.  See Royster v. Polk, 299 F. App'x 250, 251 (4th Cir. 2008) (per curiam) (loss of good-time credits); In re Moody, 105 F. App'x 458, 465 (4th Cir. 2004) (per curiam) (parole eligibility).  But see Gray v. Lee, 608 F. App'x 172, 173 n.* (4th Cir. 2015) (construing a petition from state prisoner attacking the execution of his sentence as a § 2241 petition (citing In re Vial, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (discussing federal prisoner)).  With this opinion, we clear up any confusion on this issue.

10

a.

A "commonplace of statutory construction [is] that the specific governs the general." United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 138 (4th Cir. 2014) (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992)); see also Coady, 251 F.3d at 484; Medberry, 351 F.3d at 1060.  Along these lines, "a general provision should not be applied 'when doing so would undermine limitations created by a more specific provision.'" Coady, 251 F.3d at 484 (quoting Varity v. Howe, 516 U.S. 489, 511 (1996)).

This canon is directly applicable to the interplay between § 2254 and § 2241.  Section 2241(c)(3) generally provides that the "writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3) (emphases supplied).  Section 2254 has more specific language: a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Id. § 2254(a) (emphasis supplied).

Here, both statutes "authorize [Wright]'s challenge to the legality of his continued state custody."  Coady, 251 F.3d

11

at 484.  Wright alleges he is a "prisoner . . . in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), but he is also "a person in custody pursuant to the judgment of a State court," id. § 2254(a).[6]  According to the plain language of the statutes, then, Wright is technically covered by both provisions.

However, we must be cognizant of § 2254's more specific language.  Section 2254, by its terms, "applies to a subset of those to whom § 2241(c)(3) applies -- it applies to 'a person in custody pursuant to the judgment of a State court' who is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Medberry, 351 F.3d at 1059 (quoting 28 U.S.C. § 2254(a)) (emphasis in original).  We find support for this notion from the Supreme Court. In Felker v. Turpin, the Court determined, inter alia, that the enactment of AEDPA did not repeal the Court's authority to entertain original

---

[6] There is no dispute that Wright is "in custody pursuant to the judgment of a State court."  See J.A. 182-83 (North Carolina state court judgments); Wade, 327 F.3d at 331 (rejecting argument that prisoner was "in custody" pursuant to an order of the state parole board (rather than a judgment of a state court), explaining, "Most immediately Wade does find himself, in common parlance, in custody by virtue of the parole board's decision to revoke his parole.  But he still is, and remains, in custody pursuant to his 1994 conviction and sentence.").  In addition, Wright alleges he is being held "in violation of the Constitution or [federal] law"; he claims that the prison's treatment of him as an SSA inmate constitutes ex post facto, due process, and equal protection violations.

12

habeas petitions filed pursuant to § 2241 and § 2254 at the Supreme Court level. See 518 U.S. 651, 660-62 (1996). In its analysis, the Court recognized that AEDPA "impos[ed] new requirements for the granting of relief to state prisoners" and further noted that the Supreme Court's "authority to grant habeas relief to state prisoners is limited by § 2254, which specifies the conditions under which such relief may be granted to 'a person in custody pursuant to the judgment of a State court.'" Id. at 662 (quoting 28 U.S.C. § 2254(a)) (emphasis supplied). And that "authority to grant habeas relief" flows from § 2241. Id. at 662; see id. at 658.

Wright contends, however, that "Felker's relevance is highly circumscribed" because the Court "was never squarely presented with the issue presented in this case," and it "was chiefly interested in AEDPA's effect on its own authority" to entertain original habeas petitions. Movant's Rep. Br. 6 (internal quotation marks omitted). This may be. But the Court's recognition of § 2254 as a "limit[ing]" provision that "specifie[s] the conditions under which" § 2241 habeas relief may be granted to convicted state prisoners is key here, as "a specific statute will not be controlled or nullified by a general one." Radzanower v. Touche Ross & Co., 426 U.S. 148, 153 (1976); cf. United States v. Grant, 715 F.3d 552, 558 (4th Cir. 2013) ("[A] statute [that] limits a thing to be done in a

13

particular mode[] includes the negative of any other mode."
(quoting Botany Worsted Mills v. United States, 278 U.S. 282,
289 (1929))).

We readily conclude, then, that § 2254 "is more in the
nature of a limitation on authority than a grant of authority."
Medberry, 351 F.3d at 1059.  Allowing Wright to proceed under
§ 2241 alone, and ignoring § 2254, would "undermine [the]
limitations created by" § 2254, Varity, 516 U.S. at 511, and "we
do not believe Congress intended to undermine [a] carefully
drawn statute" like section 2254 "through a general [provision]"
like section 2241, Morales, 504 U.S. at 385 (internal quotation
marks omitted); cf. Grant, 715 F.3d at 558 ("We are extremely
skeptical that Congress intended that granting district courts
the general authority to modify probation provisions would allow
courts to bypass the much more specific scheme Congress created
concerning modification of restitution, essentially rendering
the scheme a nullity in a wide range of cases.").

b.

Moreover, in our analysis of the plain language, we
must also "read the words in their context and with a view to
their place in the overall statutory scheme."  King v. Burwell,
135 S. Ct. 2480, 2489 (2015) (internal quotation marks omitted).
Adopting Wright's argument would require us to read § 2241 in

isolation, ignoring its context within Title 28 and its effect on other AEDPA provisions.

Most importantly, it is well-settled that "courts should disfavor interpretations of statutes that render language superfluous." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992). Reading § 2254 as anything but a limitation on § 2241's authority -- in other words, allowing state prisoners to proceed under one statute or the other -- would render § 2254 "superfluous" and "effectively . . . meaningless." Medberry, 351 F.3d at 1060. For example, if we embraced Wright's argument, "a state prisoner could simply opt out of [§ 2254's] operation by choosing a different label for his petition," just as Wright seeks to do in this case. Id. at 1061; see also Thomas v. Crosby, 371 F.3d 782, 786 (11th Cir. 2004) ("If § 2254 were not a restriction on § 2241's authority . . . then § 2254 . . . would be a complete dead letter, because no state prisoner would choose to run the gauntlet of § 2254 restrictions when he could avoid those limitations simply by writing '§ 2241' on his petition . . . ." (quoting Medberry, 351 F.3d at 1060-61)).

Wright attempts to combat this reality by suggesting that § 2254 would retain relevancy if convicted state prisoners challenging only the execution of a sentence, rather than the underlying conviction or sentence, could proceed under § 2241. See Movant's Rep. Br. 18. At first blush, this argument seems

15

to be a good one, as we have read § 2254's sister statute applying to <u>federal</u> prisoners, 28 U.S.C. § 2255, the same way. See <u>In re Vial</u>, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) ("[A]ttacks on the execution of a sentence are properly raised in a § 2241 petition."). But upon further examination of the comparative language of § 2254 and § 2255, this argument loses steam. Section 2255(a) only pertains to situations in which a prisoner "claim[s] the right to be released" on the ground that "<u>the sentence was imposed</u> in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a) (emphasis supplied). The plain language of § 2255 does not allow for challenges to the manner in which one's sentence is executed. See <u>Fontanez</u>, 807 F.3d at 86 ("As a general matter, a <u>federal</u> prisoner must challenge the execution of a sentence under 28 U.S.C. § 2241, and the sentence itself under 28 U.S.C. § 2255." (emphasis supplied)); <u>see also</u> <u>United States v. Addonizio</u>, 442 U.S. 178, 187 (1979) (explaining that § 2255 is not the proper vehicle for a federal prisoner challenging a "change in Parole Commission policies . . . [that] affected the way in which the court's judgment and sentence would be performed but . . . did not affect the lawfulness of the judgment itself -- then or now"). The language of § 2254, in contrast, "is considerably broader." <u>Walker</u>, 216 F.3d at 633. It applies to any petition filed by a prisoner "in custody pursuant to the judgment of a

16

State court," 28 U.S.C. § 2254(a); therefore, "[t]he focus is on the fact of custody, not necessarily on flaws in the underlying judgment or sentence." Walker, 216 F.3d at 633.

Finally, Wright is concerned that if AEDPA "operated to restrict an inmate's access to the writ to seek relief under § 2254 only, that would be, in essence, a repeal of § 2241 for state prisoners." Movant's Br. 25. But § 2241 sweeps more broadly than Wright perceives. Section 2241 is still "available for challenges by a state prisoner who is not in custody pursuant to a state court judgment." White, 370 F.3d at 1006. For example, prisoners "in state custody for some other reason, such as pre-conviction custody, custody awaiting extradition, or other forms of custody that are possible without a conviction" are able to take advantage of § 2241 relief. Id. (internal quotation marks omitted); see, e.g., McNeely v. Blanas, 336 F.3d 822, 824 n.1 (9th Cir. 2003) (allowing a pre-trial detainee to proceed under § 2241).

Moreover, as explained above, Congress merely limited -- not repealed -- § 2241 via § 2254(a). Placing such reasonable limitations on habeas relief is a permissible exercise of congressional authority. See Tyler v. Cain, 533 U.S. 656, 661 (2001) (recognizing "AEDPA greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications"); In re

17

*Hill*, 715 F.3d 284, 295 (11th Cir. 2013) ("When it enacted AEDPA, Congress sought to bolster or add to the then-existing limitations on judicial power to grant habeas relief."); *Evans v. Thompson*, 518 F.3d 1, 10 (1st Cir. 2008) ("There is . . . nothing inherently unconstitutional about Congress restricting the scope of relief available from lower federal courts on collateral review of state criminal convictions."). Therefore, Wright's repeal concerns are of no moment.

2.

Purpose of AEDPA

Our interpretation of the statutory language "is consistent with the original purposes" of AEDPA. *Triton Marine Fuels Ltd., S.A. v. M/V PACIFIC CHUKOTKA*, 575 F.3d 409, 417 (4th Cir. 2009).

One of the main purposes of AEDPA was "to permit delayed or second petitions only in fairly narrow and explicitly defined circumstances." *David v. Hall*, 318 F.3d 343, 346 (1st Cir. 2003); *see also* *Bucci v. United States*, 809 F.3d 23, 27 (1st Cir. 2015) (The "clear intent of Congress" in passing AEDPA is "that the pre-clearance process be streamlined."); *Triestman v. United States*, 124 F.3d 361, 378 (2d Cir. 1997) (By enacting AEDPA, Congress intended "to streamline collateral review and to discourage repetitive and piecemeal litigation.").

18

But Wright's assertion -- that simply because he chose to fill out his claims on a form labeled "28 U.S.C. § 2241," he should reap the benefits of § 2241's broad construction and subvert AEDPA's restrictions -- would defeat this purpose.  Such an interpretation would allow state prisoners to sidestep the "statutory gatekeeping mechanisms" present in § 2244 and § 2254, Walker, 216 F.3d at 628, thereby "thwart[ing] Congressional intent" to "restrict[] the availability of second and successive petitions through Section 2244(b)," Coady, 251 F.3d at 485, 484.  We cannot embrace such an interpretation.

3.

Conclusion

According to the plain language of the statutes at issue and the purpose and context of AEDPA, Wright's petition, although styled as a § 2241 petition, is governed by § 2254, and as such, should be treated as an "application under section 2254."  28 U.S.C. § 2244(b)(2).  Therefore, when a prisoner being held "pursuant to the judgment of a State court" files a habeas petition claiming the execution of his sentence is in violation of the Constitution, laws, or treaties of the United States, the more specific § 2254 "and all associated statutory requirements" shall apply, regardless of the statutory label the prisoner chooses to give his petition.  Walker, 216 F.3d at 633

19

(citing Felker, 518 U.S. at 662).  Thus, Wright must "move in the appropriate court of appeals for an order authorizing the district court to consider the [second or successive] application."  28 U.S.C. § 2244(b)(3)(A).

## B.

### Should We Grant Authorization?

That brings us to section 2244, which provides, "A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed," unless:

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(A), (B)(i) & (ii) (emphasis supplied).

Wright does not contend that he qualifies for either of these exceptions.  Instead, he claims § 2244(b)(2) does not apply to his petition even if the petition is governed by § 2254.  His petition, he argues, should not be considered

20

"second or successive" at all. Wright maintains that his petition is not "second or successive" because the claims in his proposed petition "were not previously brought in a prior petition"; that is, "he has never filed a petition attacking the execution of his sentence." Movant's Br. 31, 33 (emphasis supplied).

The Supreme Court has held that the phrase "second or successive" "must be interpreted with respect to the judgment challenged." Magwood v. Patterson, 561 U.S. 320, 333 (2010). But Magwood specifically declined to extend its "judgment challenged" rule to petitions challenging the execution of a sentence. See id. at 338 n.12 ("We address only an application challenging a new state-court judgment for the first time," not "habeas petitions challenging the denial of good-time credits or parole."). We thus rely on pre-AEDPA abuse-of-the-writ principles and conclude that Wright's application is "second or successive" because it raises claims that could have been raised in prior petitions. 28 U.S.C. § 2244(b)(2).

1.

Second or Successive

"Although Congress did not define the phrase 'second or successive,' as used to modify 'habeas corpus application under section 2254,' it is well settled that the phrase does not simply 'refe[r] to all § 2254 applications filed second or

21

successively in time.'" Magwood, 561 U.S. at 331-32 (alteration in original) (citation omitted) (quoting Panetti v. Quarterman, 551 U.S. 930, 944 (2007)); see also Panetti, 551 U.S. at 947 (creating an "exceptio[n]" to § 2244(b) for a second application raising a claim that would have been unripe had the petitioner presented it in his first application); Stewart v. Martinez-Villareal, 523 U.S. 637, 643 (1998) (treating a second application as part of a first application where it was premised on a newly ripened claim that had been dismissed from the first application "as premature"); Slack v. McDaniel, 529 U.S. 473, 478 (2000) (declining to apply § 2244(b) to a second application where the district court dismissed the first application for lack of exhaustion).

Interpreting the phrase "second or successive" in the context at hand requires us to apply pre-AEDPA abuse-of-the-writ principles. See Crouch, 251 F.3d at 723 (collecting cases); see also Stewart, 523 U.S. at 643-45 (looking to pre-AEDPA law to determine whether claims were barred by § 2244(b)); Panetti, 551 U.S. at 943-44 (explaining that the phrase "second or successive" is not "self-defining" and "takes its full meaning from [the Court's] case law, including decisions predating the enactment of [AEDPA]"). The Supreme Court has held that new claims raised in subsequent habeas petitions were "abusive" if those claims were available to the petitioner at the time of a

22

prior petition's filing. See, e.g., McCleskey v. Zant, 499 U.S. 467, 489 (1991) ("Our recent decisions confirm that a petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice.") This principle "is not confined to instances where litigants deliberately abandon claims; it also applies to instances where litigants, through inexcusable neglect, fail to raise available claims." Noble v. Barnett, 24 F.3d 582, 585 (4th Cir. 1994) (citing McCleskey, 499 U.S. at 489-90).

The claims raised in Wright's proposed petition were clearly available to him before he filed prior applications. His first three claims are based on the argument that he should be treated as a Fair Sentencing Act ("FSA") inmate, rather than a Structured Sentencing Act ("SSA") inmate, for purposes of credit, parole determination, and honor-grade classification. But the SSA became effective October 1, 1994, two years before Wright was sentenced in 1996. See State v. Whitehead, 722 S.E.2d 492, 494 (N.C. 2012) ("The General Assembly enacted the [SSA] to supersede the FSA for offenses committed on or after the SSA's effective date, 1 October 1994." (emphasis omitted)); cf. Wade v. Robinson, 327 F.3d 328, 333 (4th Cir. 2003) (determining, for statute of limitations purposes, "the date on which the factual predicate of [petitioner's] claim could have

23

been discovered through the exercise of due diligence" was the date petitioner "could have discovered" the factual predicate "through public sources"). Therefore, Wright has been able to raise his FSA-related claims for the entirety of his term of incarceration.

As to his claim that his parole should have been reviewed more frequently, Wright was informed on May 20, 2009, that his next review would occur in 2012, instead of the following year. See J.A. 25 (parole determination dated 5/20/09": "Your case is scheduled to be reviewed for parole purposes again on or about 5/18/2012."). Thus, his challenge to this prolonged review period could have been raised in his March 2012 or February 2013 petitions. To the extent Wright argues that his last parole denial was in 2015, and "he could not have raised any claims arising out of the denial of parole in a past petition," Movant's Rep. Br. 28, Wright's proposed petition does not specifically challenge the 2015 parole determination, aside from the fact that it inevitably occurred as part of a three-year review pattern. Thus, he "knew of all the facts necessary to raise his parole claim before he filed his [prior] federal petition." Benchoff v. Colleran, 404 F.3d 812, 818 (3d Cir. 2005) (internal quotation marks omitted) (alteration omitted) (deeming petition challenging parole denials to be "second or

24

successive," even though third parole denial occurred after filing of previous habeas application).

Therefore, based on pre-AEDPA abuse-of-the-writ principles, Wright's proposed petition is deemed "second or successive."

## 2.

### Requirements of § 2244(b)(2)

Wright has not shown that his claims rely "on a new rule of constitutional law," or that the "factual predicate for [his] claim[s] could not have been discovered previously through the exercise of due diligence." 28 U.S.C. § 2244(b)(2)(A), (B)(i). Indeed, he has not even attempted to do so. As a result, he does not meet the requirements for authorization to file a second or successive application.

## III.

Wright was required to move for authorization to file a second or successive application for habeas relief. His petition is second or successive, and he does not meet the criteria for authorization. Therefore, his motion is denied.

MOTION DENIED

25