**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 7, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,

     Plaintiff–Appellee,

v.

RICKY C. WILLIAMS,

     Defendant–Appellant.

------------------------------

USAA FEDERAL SAVINGS BANK, and
its successors or assigns,

     Garnishee.
_____

No. 17-6226

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:15-CR-00196-M-1)**
_____

Submitted on the briefs:*

Ricky C. Williams, *pro se*.

Mark A. Yancey, United States Attorney, and Kay Sewell, Assistant United States Attorney, Oklahoma City, Oklahoma, for Plaintiff–Appellee.
_____

_____

     * After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Before **PHILLIPS**, **McKAY**, and **O'BRIEN**, Circuit Judges.

_____

**McKAY**, Circuit Judge.

_____

In February 2016, Defendant Ricky Williams pled guilty to tax fraud relating to his preparation of federal income-tax returns for third-party clients for the 2010 and 2011 tax years. In his plea agreement, he "agree[d] to pay restitution by making an immediate payment in full on or before the date set for sentencing" and "agree[d] to make payments as ordered by the Court" if he lacked the resources to make an immediate payment in full. (R. Vol. I at 27.) After pleading guilty, he was initially released on bond pending sentencing. However, his release was revoked after the court discovered that he had been violating the terms of his release by again engaging in tax preparation activities for someone other than himself or his spouse. The probation officer who prepared his Presentence Investigation Report "determined that the defendant lied about his income, assets, and liabilities" to the probation officer. (R. Vol. II at 33.) Among other things, the probation officer discovered several undisclosed financial transactions that Defendant had conducted with someone else's social security number; for instance, Defendant opened a credit card account using another person's Social Security number in March 2016, shortly after being released on bond. In discussing Defendant's dishonest post-plea conduct, the probation officer noted that Defendant had a bank "account containing approximately $37,000 that had been frozen due to the IRS investigation." (*Id.* at 18.) The probation officer reported that Defendant had contacted the bank about a month after he entered his

2

guilty plea and "asked the bank to unfreeze the account by falsely representing to the bank that he was no longer under investigation." (*Id.*) The bank contacted the IRS and learned that Defendant had pled guilty to the charge. The bank then "advised the IRS they would keep the account frozen." (*Id.*)

The district court sentenced Defendant to thirty months of imprisonment and ordered him to pay $240,361 in restitution to the IRS. Defendant was also ordered to pay a $100 special assessment. The court's Schedule of Payments provided in pertinent part:

> A ☒ Lump sum payment of $240,461.00 ($240,361.00/restitution; $100.00/special assessment) due immediately, balance due . . . in accordance with . . . F below . . . .
>
> F ☒ Special instructions regarding the payment of criminal monetary penalties:
>
> If restitution is not paid immediately, the defendant shall make payments of 10% of the defendant's quarterly earnings during the term of imprisonment; and
>
> If restitution is not paid in full at the time of release from confinement, the defendant shall make payments the greater of $100.00 per month or not less than 10% of the defendant's gross monthly income, as directed by the probation officer. . . .

(R. Vol. I at 57.)

A few months after Defendant's sentencing, the government filed an application for post-judgment writ of garnishment against the frozen bank account. The bank objected on the grounds that the account was subject to "a prior internal USAA Federal Savings Bank hold from its Fraud Department for the amount of $37,542.02." (*Id.* at 66.) The bank stated: "This account has been under this hold

3

from May 29, 2012 and continues at the present time.  Therefore, it is not subject to this garnishment." (*Id.*)

The magistrate judge concluded that there was no need to address the bank's objection because the government could not seek garnishment in any event; according to the magistrate judge's interpretation of the Schedule of Payments, if Defendant did not immediately pay restitution, then the government could not collect any restitution above the 10% of quarterly earnings provided for in the Schedule. The magistrate judge thus recommended denial of the government's application for garnishment.

The district court declined to accept the magistrate judge's recommendation. The court held that because its sentencing order made a lump-sum payment of the total amount "due immediately," "the total amount of restitution is currently due and . . . the government can enforce the restitution order by way of the instant application for post-judgment writ of garnishment." (*Id.* at 132.)  For support, the district court cited to *United States v. Behrens*, 656 F. App'x 789, 790 (8th Cir. 2016), and *United States v. Shusterman*, 331 F. App'x 994, 996–97 (3d Cir. 2009), both of which held that a payment schedule set forth in the judgment did not preclude garnishment as an additional means to collect the restitution judgment where the judgment specified that the amount owed was due in full immediately.  The court thus granted the government's application for a writ of garnishment.  In so doing, the district court did not address the bank's objection to the writ of garnishment.  Defendant then filed this appeal.

4

As the magistrate judge's and district court's contrasting holdings show, the restitution order in this case is subject to two different interpretations. First, the order could be interpreted as the magistrate judge interpreted it, with the schedule of payments in Provision F effectively and impliedly modifying Provision A's requirement of an immediate lump-sum payment of $240,461, making this provision null and void if it was not immediately and fully complied with. Second, the order could be interpreted as the district court interpreted it, with the schedule of payments in Provision F providing a back-up schedule for the payment of whatever amounts are not paid in accordance with Provision A, but with Provision A's requirement of immediate payment of the total sum of restitution remaining in effect and controlling to the extent that funds are available to satisfy this payment requirement.

"We give deference to the district court's interpretation of its own order." *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 863, 872 (10th Cir. 2018). We are persuaded that the district court's interpretation of its own prior restitution order in this case is reasonable, and we accordingly defer to this interpretation. Therefore, like the district court, we interpret the restitution order to mean that the total amount of restitution remains currently due under Provision A, with Provision F providing only a secondary, back-up system for payments that cannot be made now in accordance with Provision A.

Under this interpretation of the restitution order, we see no error in the court's conclusion that the government was entitled to garnish Defendant's bank account to obtain partial payment of the amount currently due in restitution. Garnishment is

5

improper where the government is seeking payment of an amount that is not currently due. In *United States v. Martinez,* for instance, we held that the government could not garnish a defendant's retirement accounts to "enforce payments that are not yet due under [the defendant's] court-ordered payment schedule." 812 F.3d 1200, 1201 (10th Cir. 2015). But the reason the payments were not yet due in that case is that the district court had expressly declined to make the total amount of restitution due in full immediately, but had instead only required "$300 immediately," with the "balance due" in accordance with the schedule of payments. *Id.* at 1203–04. Courts have almost uniformly recognized a "crucial distinction" between cases like *Martinez*, in which the court orders the defendant to pay only through a payment schedule with no requirement of immediate payment in full, and cases like *Behrens* and *Shusterman*, in which the judgment specifies that the amount owed is due in full on the date of judgment, regardless of whether the judgment includes a back-up schedule of payments to cover any unpaid amounts. *See United States v. Daniels*, 2017 WL 1538457, at *3 (N.D. Okla. 2017); *see also, e.g.*, *United States v. Kay*, 2017 WL 875784 (D. Minn. 2017); *but see United States v. Villongco*, 2016 WL 3747508 (D.D.C. 2016). Defendant's "debt is payable in full now, as [he] agreed." *United States v. Fariduddin*, 469 F.3d 1111, 1113 (7th Cir. 2006).

We agree with the courts that have recognized this distinction and thus **AFFIRM** the district court's conclusion that the government may seek garnishment of Defendant's bank account because the total amount of restitution was ordered "due immediately" at the time of judgment. We note, however, that the district court

6

failed to consider the bank's objection to the writ of garnishment, and we suggest that the district court address the bank's objection before ordering the release of funds to the government.