152 T.C. No. 12

UNITED STATES TAX COURT

RANDY ALAN CARPENTER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5327-17L.                    Filed April 18, 2019.

P pleaded guilty to violating I.R.C. sec. 7206(1) by willfully filing false returns for 2005 and 2006. At sentencing, the District Court ordered P to pay restitution to the IRS, ordered that restitution was due immediately, and set a schedule of payments. The District Court also ordered that P pay all outstanding tax as an additional condition of his supervised release. Though P made each scheduled payment, he did not pay the full restitution amount.

R assessed against P the full amount of restitution ordered in reliance on I.R.C. sec. 6201(a)(4). When P did not pay the assessed amount R began collection action. Before the first payment was due under the schedule set by the District Court, R sent a final notice of intent to levy and filed a notice of Federal tax lien. Following a CDP hearing IRS Appeals sustained the proposed collection actions. P contends that I.R.C. sec. 6201(a)(4) does not grant R independent administrative authority to collect amounts of criminal restitution. P also contends a schedule of restitution payments limits the amount R

may administratively collect absent a further order by the sentencing court.

Held: I.R.C. sec. 6201(a)(4) grants R independent authority to collect administratively amounts of criminal restitution assessed under that section.

Held, further, a payment schedule included in an order for criminal restitution that is due immediately does not limit R's authority to collect administratively unpaid amounts of such restitution.

Held, further, Appeals did not abuse its discretion in sustaining the collection actions at issue.

Randy Alan Carpenter, pro se.

Johnny Craig Young, Abby Moua, and Scott Lyons, for respondent.


OPINION


COHEN, Judge: In this collection due process (CDP) case petitioner seeks review under sections 6320(c) and 6330(d)(1) of the Internal Revenue Service (IRS) Office of Appeals' (Appeals) determination sustaining a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (NFTL), and a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing (FNIL). Both letters relate to an order of criminal restitution for tax

losses, which prompted the IRS assessment and administrative collection efforts pursuant to section 6201(a)(4). That provision authorizes the Secretary, following a taxpayer's criminal conviction for failure to pay any tax imposed by title 26, to "assess and collect the amount of restitution" ordered by the sentencing court "in the same manner as if such amount were such tax." Sec. 6201(a)(4). Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Following our Opinion in <u>Klein v. Commissioner</u>, 149 T.C. 341 (2017), respondent conceded and abated the statutory interest and additions to tax determined with respect to the assessments at issue. After concessions we must decide two issues of first impression. The first is whether section 6201(a)(4) grants the IRS independent authority to collect administratively amounts assessed under that section; we hold that it does under these facts. The second is whether the schedule of payments in the sentencing court's criminal restitution order limits IRS administrative collections; we hold that it does not. We must also decide whether to sustain the issuance of the FNIL and the NFTL filing on an amount of restitution that included statutory interest and additions to tax that respondent subsequently conceded and abated. We hold that each be sustained only in an

amount that reflects the restitution obligation due from petitioner. Finally, we must decide whether the Appeals settlement officer who conducted petitioner's CDP hearing abused his discretion in sustaining the FNIL and the filing of the NFTL; we hold that he did not.

## Background

The parties submitted this case fully stipulated under Rule 122. The stipulated facts are incorporated in our findings by this reference. Petitioner resided in North Carolina when he filed his petition.

## I.     The Underlying Criminal Case

Following a prosecution in the U.S. District Court for the Western District of North Carolina, petitioner entered into a plea agreement pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Petitioner agreed to plead guilty to certain charges and pay restitution for tax losses in exchange for a sentence within a lower range than the one calculated under the U.S. Sentencing Guidelines. Pursuant to the agreement petitioner pleaded guilty to one count of violating section 7206(1) by willfully making and subscribing to a false Federal income tax return for 2005, and to one count of violating section 7206(1) by willfully making and subscribing to a false Federal income tax return for 2006.

Petitioner admitted that the false returns resulted in his failure to correctly report all of his gross income for those years.

On April 15, 2014, the District Court held a sentencing hearing during which the court accepted the plea agreement and sentenced petitioner to 27 months in prison, followed by one year of supervised release for each count to run concurrently. The District Court also accepted without objection a presentencing report and the Government's calculation of the Federal tax loss for petitioner's 2005 and 2006 tax years. As a separate component of the sentence, the District Court ordered petitioner to pay restitution to the IRS of $507,995.

During the sentencing hearing the judge's oral pronouncements closely followed the order and text of the District Court's standard form, judgment in a criminal case (judgment form), and the District Court followed the judgment form to organize its oral pronouncements while summarizing the language used in the judgment form. See United States v. Randy Alan Carpenter, No. 12cr00116-GCM (W.D.N.C., Apr. 17, 2014) (AO 245B (WDNC Rev. 02/11) Judgment In A Criminal Case). When dealing with the conditions of supervised release, in both its oral pronouncements at the sentencing hearing and in its written judgment, the District Court ordered petitioner to file tax returns with the IRS as required by law. The sentencing judge orally pronounced that petitioner "shall cooperate with the

Internal Revenue Service to pay outstanding taxes". The District Court's written judgment stated that petitioner shall "pay all outstanding taxes, interest and penalties" as an additional condition of his supervised release.

The District Court next addressed criminal monetary penalties and imposed a mandatory $200 special assessment, did not impose a fine, and ordered petitioner to pay restitution in the full amount of the tax loss. Because the total criminal monetary penalties were more than $2,500, the District Court considered petitioner's ability to pay statutory interest required for any fine or restitution that was not paid in full within 15 days of the judgment. See 18 U.S.C. sec. 3612(f) (2012). The District Court found that petitioner did not have the financial ability to pay either a fine or interest on the amounts of criminal monetary penalties remaining unpaid 15 days after it entered judgment and waived both. After waiving statutory interest due according to 18 U.S.C. sec. 3612(f), the District Court stated: "I don't know what effect that has on the Internal Revenue Service with all your penalties and interests [sic] and whatever, it seems to me that if you hope to get anything out of this guy, freezing his number at $507,995 is a pretty good idea. And that is what's ordered by the court."

Once the District Court set the amount of the total criminal monetary penalties and waived interest payments on those, it addressed when payment was

due. In both its oral pronouncements at the sentencing hearing and in its written judgment the District Court ordered that the restitution was "due and payable immediately" and that "if * * * [petitioner] can't pay" the entire amount of restitution, he must pay $100 per month beginning 60 days after his release from imprisonment. The District Court further stated in its oral pronouncements that petitioner must continue making payments "until the monies are repaid." At no point during the sentencing hearing did the District Court orally state that the $100 monthly installment was the maximum amount that petitioner must pay per month. The District Court's written judgment was consistent with its oral pronouncements at the sentencing hearing. The District Court ordered that restitution was due in full and payable immediately, and it ordered petitioner to comply with its payment schedule as a special condition of petitioner's supervised release in the event he had not fully repaid the restitution prior to his release from imprisonment.

On May 27, 2016, after his release from prison, petitioner began serving a term of supervised release. While on supervised release petitioner complied with the District Court's payment schedule. As a result, on March 7, 2017, the District Court modified the conditions of petitioner's supervised release to allow his supervision to expire on May 26, 2017, with an outstanding balance of $501,546.90 "remaining due on * * * [petitioner's] restitution obligation". As part

of this modification the District Court ordered that the amount of restitution still outstanding "be collected by civil means through the U.S. Attorney's Office."

II.     Collection Activities

A.      USAO

After petitioner's sentencing hearing the U.S. Attorney's Office (USAO) for the Western District of North Carolina took steps to collect the court-ordered restitution amount from petitioner.  On or about April 17, 2014, the USAO filed a Federal notice of lien for fine and/or restitution imposed pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 in the amount of $508,195 with the Office of the Clerk of Superior Court of Avery County, North Carolina. At some point prior to the start of the petitioner's supervised release term, the USAO began collection through the Federal Payment Levy Program (FPLP), which levied on petitioner's Social Security benefits resulting in monthly restitution payments of $283.95.  On or about December 23, 2015, the USAO forwarded to the IRS $2,340.70 that it had collected from petitioner through the FPLP levy, and the IRS recorded it as a payment against petitioner's 2005 liability. (The IRS account transcript for petitioner's 2005 liability records and credits payments total $7,648.10 as of April 3, 2018.)

B.    IRS

On January 18, 2016, the IRS made restitution-based assessments (RBA) against petitioner under section 6201(a)(4) for 2005 and 2006.  The IRS made RBAs of $89,045 and $418,950 for 2005 and 2006, respectively, which totaled the exact amount of restitution ordered by the District Court.  That same day the IRS mailed petitioner a notice and demand for the unpaid restitution.  The notice stated the total RBA amount and the interest due for each year at issue and instructed petitioner to pay the full amount to the District Court by February 1, 2016.  Petitioner wrote to the IRS to dispute the amounts due and the IRS collection efforts.  As of April 3, 2016, the combined unpaid balance for the assessed criminal restitution, excluding interest and additions to tax, totaled $500,346.90.

On May 2, 2016, the IRS sent petitioner two Notices CP504, Notice of Intent to Levy, with respect to petitioner's unpaid liabilities for 2005 and 2006.  Both notices stated that the IRS intended to levy on petitioner's State tax refund or other property, including Social Security benefits, if he failed to either call the IRS immediately or pay the amount listed directly to the IRS by May 12, 2016.  Petitioner did not respond to these notices.

On May 23, 2016, the IRS sent petitioner an FNIL, which indicated that petitioner owed a total of $759,380.74, representing the total amount of the RBAs

for 2005 and 2006, statutory interest, and additions to tax. The FNIL also stated that the Government might seize petitioner's property to satisfy the amount due but that he could appeal the proposed seizure of his assets by requesting a CDP hearing under section 6330 by June 22, 2016.

Petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, with respect to the FNIL. Petitioner checked the box on the Form 12153 indicating that he was unable to pay the balance of his liabilities and that he would like to discuss collection alternatives. He included a statement that his only source of income was Social Security disability benefits and that his expenses exceeded his income because of making restitution payments and supporting three dependents. Petitioner further stated: "I do not owe the taxes I owe restitution to the court". He asserted that he had not yet received a deficiency notice. On or about June 9, 2016, IRS mailed petitioner a letter to confirm receipt of his Form 12153 and to inform him that unless he filed Federal income tax returns for 2011 through 2015 he was ineligible for a collection alternative. This letter also requested that petitioner provide further financial information in order for Appeals to consider a proposed collection alternative and included copies of Form 433-A, Collection Information Statement for Wage

Earners and Self-Employed Individuals, and Form 433-B, Collection Information Statement for Businesses.

On or about July 1, 2016, petitioner sent a letter to the IRS stating that "I do not submit that at this time you have the authority to collect 'federal tax' from me for the periods noted * * * [and that] I mistakenly selected the collection alternative box [on Form 12153]." In the same letter petitioner also stated that "[b]y this letter, I withdraw my request for a collection alternative consideration." Petitioner went on to state:

> I disagree with the existence and amount of the federal tax, penalties, and interest as I have not received a notice of deficiency from you for the tax and have not had an opportunity to dispute the tax liability with you; I noted this on the Form 12153. I offer in support that '[i]n order to prove a tax deficiency, [you] must show first that the taxpayer had unreported income, and second, that the income was taxable,' United States v. Moore, 498 Fed. Appx. 195, 201 (4th Cir. 2012), quoting United States v. Abodeely, 801 F.2d 1020, 1023 (8th Cir. 1986). This has not been done and your intent to levy action is premature. Based on any reasoning you may have to proceed, there has never been an effort by the government to identify amounts deposited that are non-taxable, i.e., the 'purification' process. Moore at 202, citing United States v. Boulet, 577 F.2d 1165, 1167 (5th Cir. 1978). I expect my taxpayer 'right to pay no more than the correct amount of tax' to be upheld.

Petitioner failed to provide sufficient financial information, and he did not file his missing Federal income tax returns in order to be eligible for collection alternative consideration.

On or about June 28, 2016, the IRS filed an NFTL against petitioner with the Office of the Clerk of Superior Court of Avery County, North Carolina, and sent petitioner an NFTL filing. Petitioner timely submitted a separate Form 12153 challenging the NFTL filing. On this Form 12153 petitioner did not check the box requesting consideration for a collection alternative. Instead petitioner included a statement that the "IRS lacks jurisdiction to lien and levy" to enforce the District Court's restitution order. He asserted again that he had not received a notice of deficiency and had not had an opportunity to dispute the underlying tax liability.

C.    CDP Hearing

On August 10, 2016, petitioner's case was assigned to an Appeals settlement officer (officer). During the officer's case review he examined the District Court's restitution order, the transcript of the sentencing hearing, IRS criminal investigation closing reports, and IRS inventory control system notes related to the making of the RBAs and the subsequent FNIL and the NFTL filing. The officer reviewed IRS records related to petitioner's income for the 2011 through 2015 years, which indicated that petitioner received Social Security benefits and had canceled debt. The officer discussed petitioner's failure to file Federal tax returns for 2011 through 2015 with both petitioner and his probation officer. The officer also secured and reviewed a partially completed copy of Form

433-A from petitioner. The officer reviewed IRS administrative guidance related to RBAs and caselaw related to criminal restitution orders cited by petitioner. The officer verified that the total of the RBA amounts made for 2005 and 2006 matched the amount of restitution ordered by the District Court. The officer also confirmed that the IRS factored into its financial analysis and collections determination the $100-per-month payment schedule ordered by the District Court. Accordingly, the officer determined that the IRS had satisfied the relevant procedural requirements.

On November 17, 2016, the officer conducted a telephone CDP hearing with petitioner. During this hearing petitioner argued: (1) that the IRS lacks authority to enforce criminal restitution orders, (2) that the IRS is prohibited from initiating administrative collection actions without obtaining an order from the District Court, and (3) that IRS collections may not exceed the financial obligations established by the District Court's monthly payment schedule. Petitioner did not request a collection alternative or propose an installment agreement either during the hearing or in his subsequent written arguments submitted at the officer's invitation. The officer wrote to petitioner on January 23, 2017, to respond to subsequent written arguments and to inform petitioner that he would recommend that Appeals sustain the FNIL and the filing of the NFTL.

D.    Notice of Determination

On January 30, 2017, the officer sustained the determination, closed the case, and submitted it for review to his Appeals team manager. The team manager concurred in the officer's proposed determinations. Appeals sent petitioner two notices of determination concerning collection action(s) under section 6320 and/or 6330, one each for the NFTL filing and the FNIL, dated February 3, 2017. At the time Appeals sent these notices of determination, Klein v. Commissioner, 149 T.C. 341, had not been decided.

## Discussion

I.    Disputed Authority To Collect Criminal Restitution

We address, as an initial matter, petitioner's challenge to the Secretary's administrative collection authority related to criminal restitution. Petitioner argues that section 6201(a)(4) does not authorize the Secretary to file an NFTL independently or to levy on property to collect amounts of restitution ordered by a sentencing court and subsequently assessed under that section. He also contends that the Secretary must seek a further order from the sentencing court before administratively collecting amounts in excess of the sentencing court's original schedule of monthly restitution payments. Respondent disagrees with petitioner on both points.

A.     The FETIA Amendments

With the enactment of section 6201(a)(4) Congress expanded the Secretary's collection authority in relation to criminal restitution ordered after August 16, 2010.  See Firearms Excise Tax Improvement Act of 2010 (FETIA), Pub. L. No. 111-237, sec. 3, 124 Stat. at 2497.  This provision directs that "[t]he Secretary shall assess and collect the amount of restitution under an order pursuant to section 3556 of title 18, United States Code, for failure to pay any tax imposed under this title in the same manner as if such amount were such tax."  Sec. 6201(a)(4)(A) (emphasis added); see also Bontrager v. Commissioner, 151 T.C. ___, ___ (slip op. at 10-11) (Dec. 12, 2018).  The Secretary may not make an RBA "before all appeals of * * * [the restitution order] are concluded and the right to make all such appeals has expired."  Sec. 6201(a)(4)(B); see also FETIA sec. 3(a).

Congress exempted the Secretary's power to assess and to bring collection actions for RBAs from the usual time limitations.  Sec. 6501(c)(11) ("[Criminal restitution] may be assessed, or a proceeding in court for the collection of such amount may be begun without assessment, at any time."); see FETIA sec. 3(b), 124 Stat. at 2498.  It also prohibited a taxpayer from collaterally attacking the underlying restitution amount.  Sec. 6201(a)(4)(C) ("The amount of such restitution may not be challenged * * * on the basis of the existence or amount of

the underlying tax liability in any proceeding authorized under this title[.]").

Significantly, Congress did allow the taxpayer to retain the ability to challenge the

Secretary's method of collecting an RBA. See secs. 6320(b), 6330(b); see also

Staff of J. Comm. on Taxation, General Explanation of Tax Legislation Enacted in

the 111th Congress, 461 (J. Comm. Print 2011).

B. Assessment Authority

In Klein v. Commissioner, 149 T.C. 341, we considered whether Congress

intended the assessment of criminal restitution to be a basis for statutory interest

and additions to tax. We held that Congress did not on the basis of its directive

that restitution assessments and collections be made "in the same manner as if

such amount were such tax." Id. at 351-352 (quoting section 6201(a)(4)(A)). We

concluded that section 6201(a)(4) was intended only to enable the IRS to assess

the exact amount of restitution ordered, which would create "an account receivable

on the taxpayer's transcript against which the restitution payment can be credited."

Id. at 352; see also Rozin v. Commissioner, T.C. Memo. 2017-52, at *10-*11

("The IRS is permitted to immediately assess, without issuing a statutory notice of

deficiency, and collect, as if it were a tax, the restitution ordered * * * separately

from a taxpayer's [civil] tax liability[.]" (Citations omitted.)). Summary

assessment of criminal restitution is an accounting measure to "facilitate IRS

bookkeeping by transforming the restitution obligation from a deemed assessment to an actual assessment." Klein v. Commissioner, 149 T.C. at 358 n.12.

### C. Collection Authority

#### 1. Provisions of Title 26

The Code requires that upon making an assessment the Secretary issue notice and demand for payment pursuant to section 6303 before starting administrative collection efforts. A Federal tax lien automatically arises as of the date an assessment is made. Sec. 6322. Section 6331 grants the Secretary the authority to collect on the assessment by levy and distraint. Congress, by its amendments to the Code in FETIA, expanded the Secretary's authority to collect actively on criminal restitution orders following summary assessment. See Muncy v. Commissioner, T.C. Memo. 2017-83, at *18, aff'd, 890 F.3d 724 (8th Cir. 2018).

Specifically, Congress exempted assessment of criminal restitution from the Code's time provisions and limited the taxpayer's ability to challenge the restitution order itself. Petitioner argues that the interplay of these sections binds the Secretary's hands to prevent collection other than by court order in accordance with the provision of title 18. This argument has no merit.

Section 6201 delays assessment and subsequent collection activities until after any appeals are concluded or the period for appeals of an order of restitution has lapsed. Sec. 6201(a)(4)(B). The inclusion of this provision indicates that Congress intended to grant the Secretary collection authority that is independent from title 18 and the underlying criminal procedures. This intention is underscored by provisions in FETIA that amend section 6501 to exclude specifically criminal restitution from the usual three-year limitation period. See sec. 6501(c)(11); see also FETIA sec. 3. With this amendment Congress ensured that any delays that may accompany criminal prosecution and any subsequent appeals would not hinder the Secretary's ability to assess and collect criminal restitution. See generally Internal Revenue Manual pt. 1.2.13.1.11 (Oct. 5, 2005); Michael I. Saltzman & Leslie Book, IRS Practice and Procedure, para. 10.01[2][e][i], at 10-8, S10-2 (rev. 2d ed. 2002 & Supp. 2018-2). In the light of the time provisions and the provision precluding direct challenges to the underlying restitution liability, we conclude that Congress intended to expand the Secretary's independent collection authority, not restrict it, as petitioner contends.

2. Provisions of Title 18

Petitioner asserts that the payment schedule included in the District Court's restitution order limits the amounts the Secretary may collect. Petitioner bases his

argument on the provision directing that the Secretary "shall assess and collect the amount of restitution under an order pursuant to section 3556 of title 18". Sec. 6201(a)(4)(A). The parties agree that the restitution in this case is an "amount of restitution under an order pursuant to section 3556 of title 18" within the meaning of section 6201(a)(4). Respondent otherwise disagrees with petitioner's interpretation.

Section 3556 of title 18 grants the District Court authority to include restitution orders as an independent part of a criminal defendant's sentence. Title 18 does not specifically grant the District Court authority to order restitution for violations of title 26. Where a case involves violations of title 26, such as the present one, 18 U.S.C. sec. 3556 (2012) grants the District Court discretionary authority to order restitution in accordance with 18 U.S.C. sec. 3663 (2012). See also 18 U.S.C. sec. 3663(a)(3) ("The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement."); 18 U.S.C. sec. 3664(f)(1)(A) (2012) (requiring a District Court using its discretionary authority under 18 U.S.C. sec. 3663 to impose restitution "in the full amount of each victim's losses" and "without consideration of the economic circumstances of the defendant."). When exercising this discretion, a sentencing court must specify in its restitution order the manner and schedule according to which the defendant

must pay.  See 18 U.S.C. secs. 3663(d), 3664(f)(2) (requiring the District Court to consider the defendant's financial resources and other assets, his income, and his obligations when determining the manner in which, and the schedule according to which, the defendant is to pay restitution), (3)(A) ("A restitution order may direct the defendant to a make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments.").  Once imposed, an order of restitution is a final judgment that may not be modified absent certain enumerated statutory exceptions.  See 18 U.S.C. sec. 3664(o); see also United States v. Bratton-Bey, 564 F. App'x 28, 29 (4th Cir. 2014); United States v. Grant, 715 F.3d 552, 557 (4th Cir. 2013).

None of the restitution-related provisions of title 18 required the Secretary to seek a court order before collecting criminal restitution.  Cf. 18 U.S.C. sec. 3664(m)(1)(A) (providing that restitution orders may be enforced by the United States in the same manner that it recovers fines or "by all other available and reasonable means").  Nothing in the text or the legislative history of section 6201(a)(4) indicates that Congress intended to limit or otherwise subordinate the Secretary's authority to assess and collect criminal restitution when it is due to the provisions of title 18.  We conclude that section 6201(a)(4) refers to 18 U.S.C. sec.

3556 as a means to direct the Secretary to the amount of criminal restitution that must be assessed and collected.

D.    Orders of Criminal Restitution

Even if the provisions of title 18 were binding on the Secretary, restitution orders with conditions such as petitioner's would not limit the Secretary's collection efforts.  In general, a restitution obligation is due immediately unless in the interests of justice the court specifies otherwise.  18 U.S.C. sec. 3572(d)(1) (2012).  To determine whether a sentencing court specified that a restitution obligation is due immediately Federal courts look to the judge's oral pronouncements at the time of sentencing and the subsequent written judgment. Where the written judgment conflicts with the court's oral pronouncements, the oral pronouncements control.  See Rakes v. United States, 309 F.2d 686, 687-688 (4th Cir. 1962) ("[T]he defendant in a criminal case must be personally present at every stage of the trial * * *.  Thus, it follows that the sentences to be served in these cases are those pronounced in the defendant's presence in open court and not those set out in the written judgments of the court.").  An expanding number of Federal courts have recognized a "crucial distinction" between cases where the court expressly orders that restitution is due only through a payment schedule that does not require immediate payment in full and cases where the court specifies

restitution is immediately due in full.  See United States v. Williams, 898 F.3d 1052, 1055 (10th Cir. 2018) (interpreting a judgment that included a payment schedule and specified that the amount owed was due in full immediately; holding that the payment schedule did not preclude garnishment as an additional means to collect the restitution judgment).

   1. Restitution Ordered Due Immediately

When payment of restitution is ordered due immediately, as it was in this case, numerous Federal courts have held that the Government is not limited by judicially crafted payment schedules and may freely pursue other means of securing restitution, including a writ of garnishment.  See 18 U.S.C. secs. 3664(m), 3613(a) (2012); see, e.g., Williams, 898 F.3d at 1055 ("We agree with the courts that have recognized this distinction and thus AFFIRM the District Court's conclusion that the government may seek garnishment * * * because the total amount of restitution was ordered 'due immediately' at the time of judgment." (explaining United States v. Martinez, 812 F.3d 1200 (10th Cir. 2015))); United States v. Wykoff, 839 F.3d 581, 582 (7th Cir. 2016); United States v. Behrens, 656 F. App'x 789, 790 (8th Cir. 2016) ("[T]he payment schedule set forth in the judgment did not preclude the instant garnishment, because the judgment [also] specified that the amount owed was due in full on the date of

judgment; and notably, the judgment imposed the obligation to make installment payments without limiting the government's ability to institute civil collections proceedings."); United States v. Schwartz, 503 F. App'x 443, 445-446 (6th Cir. 2012); United States v. Shusterman, 331 F. App'x 994, 996-997 (3d Cir. 2009); United States v. Ekong, 518 F.3d 285, 286 (5th Cir. 2007) (per curiam) (rejecting argument that immediate payment not required where nothing to the contrary in the judgment); United States v. Rush, No. 14cr00023, 2016 U.S. Dist. LEXIS 94307, at *2-*3 (W.D. Va. July 19, 2016) (and cases cited threat); United States v. Robles, No. 06-20286-CR-Gold/Goodman, 2014 U.S. Dist. LEXIS 4402, at *1-*2 (S.D. Fla. Jan. 14, 2014); United States v. Hawkins, 392 F. Supp. 2d 757, 759 (W.D. Va. 2005) ("[A] payment schedule simply serves as another collection method for the benefit of the victim rather than as a benefit to the defendant."); United States v. James, 312 F. Supp. 2d 802, 807 (E.D. Va. 2004).

## 2. Restitution Ordered Due According to Payment Schedule

Correspondingly, in cases where a sentencing court expressly declines to order restitution immediately payable, the Government's collection efforts may not exceed the amounts due according to the schedule. See, e.g., United States v. Hughes, 813 F.3d 1007, 1008-1009 (D.C. Cir. 2016); Martinez, 812 F.3d at 1203-1204 (determining restitution not due immediately where District Court expressly

declined to order immediate payment of entire amount); <u>Bratton-Bey</u>, 564 F. App'x at 30 n.2 (holding defendant not under current obligation to pay restitution where District Court granted defendant's request and ordered restitution due only after his release from incarceration according to payment schedule rather than due immediately); <u>Grant</u>, 715 F.3d at 555; <u>United States v. Kay</u>, No. 11-218(1) ADM/TNL, 2017 U.S. Dist. LEXIS 30668, at *11 (D. Minn. Mar. 3, 2017) ("Since the Judgment in this case specified that Kay's repayment was due only in installments, the full restitution amount was not due immediately."); <u>United States v. Villongco</u>, No. 07-009 (BAH), 2016 U.S. Dist. LEXIS 89285, at *6-*7, *20-*24 (D.D.C. July 11, 2016) (interpreting sentencing judge's oral pronouncements that payment due immediately, in context of his further explanation that it intended dates and amounts of payments due to be established by inmate financial responsibility program, as requiring periodic, rather than immediate, payments; quashing Government's writ of garnishment filed eight years after defendant's term of supervised release ended for accounts identified in defendant's presentencing report because defendant was in compliance with the restitution order); <u>United States v. Roush</u>, 452 F. Supp. 2d 676, 681 n.9 (N.D. Tex. 2006) (construing payment schedule to control where District Court's written judgment differentiated between payment of fines due immediately and payment of

restitution due only as scheduled), <u>vacated and remanded on other grounds</u>, 466 F.3d 380 (5th Cir. 2006).

In <u>Hughes</u> the U.S. Court of Appeals for the District of Columbia Circuit considered a restitution judgment wherein the District Court made conflicting statements about whether its restitution judgment was due immediately or according to a payment schedule. In that case the District Court ordered $442,330 in restitution for Hughes' role in her employer's fraudulent billing practices. Her employer, Blackhawk, had previously been ordered to pay over $1 million. <u>Hughes</u>, 813 F.3d at 1008. During Hughes' sentencing hearing the District Court stated that "she would not be on the hook at all [for restitution] if Blackhawk paid its fine." <u>Id.</u> The District Court further explained during its oral pronouncements

> that 'payment of restitution shall begin after the adjustment is figured where the fine for [Blackhawk] will be applied,' and later added that Hughes was to pay 'the balance of any restitution owed at a rate of not less than $50 each month * * * if it turns out that * * * there is an amount outstanding that [Hughes] owe[s]' after Blackhawk's fine is subtracted. * * *

<u>Id.</u> at 1009 (quoting transcript of sentence, Dec. 20, 2011) (alterations in original). The District Court also stated once during its oral pronouncements that restitution was "immediately payable". <u>Id.</u>

The Circuit Court determined that the District Court's brief statement that restitution was immediately payable to be "boilerplate language". Id. The Circuit Court held that including "boilerplate language" that restitution was immediately payable in the District Court's oral rendition of a restitution order was not controlling in the context of the District Court's "specific and repeated references" to the contrary. Id. (emphasis added). In this context the "district court * * * expressed * * * [its] clear intention" that Hughes' restitution obligation was to begin only after payments by her employer had been subtracted. Id.

We are persuaded by the reasoning of those courts that regularly impose restitution in sentencing defendants. Absent a District Court's expressly declining to order restitution payable immediately, its restitution judgment imposes an immediate obligation to pay on the defendant. When a District Court includes a payment schedule in a judgment that also orders restitution immediately payable, as it did in this case, the payment schedule does not limit the amounts the Government may collect from the defendant. See Hawkins, 392 F. Supp. 2d at 759 ("[A] payment schedule simply serves as another collection method for the benefit of the victim rather than as a benefit to the defendant * * * [and] is simply one means of ensuring that restitution will be paid by the defendant."); see also United States v. Dawkins, 202 F. 3d 711, 716 (4th Cir. 2000) (holding that it is

permissible for a sentencing court to order the entire restitution amount due immediately if it also sets a payment schedule to be followed in the event that the defendant cannot make immediate payment in full); James, 312 F. Supp. 2d at 806. In this case the District Court's oral statements regarding petitioner's ability to pay all at once the total amount of criminal monetary penalties, including restitution, were made in the context of its decision to waive interest payments. See 18 U.S.C. sec. 3612(f)(1) ("The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine [or restitution] is paid in full before the fifteenth day after the date of the judgment.").

At no point during the District Court's oral rendition of its restitution order did it expressly decline to impose an immediately payable restitution obligation on petitioner. Rather, the District Court expressly ordered that "[p]ayment [of petitioner's restitution obligation was] to begin immediately". The District Court clarified that it did not intend to limit IRS collection activities in both its oral pronouncements and written judgment. During the sentencing hearing, after waiving interest on unpaid restitution required according to title 18, the District Court orally stated: "I don't know what effect that has on the Internal Revenue Service with all your penalties and interests [sic] and whatever". In its written judgment the District Court ordered petitioner to "pay all outstanding taxes,

interest and penalties." The District Court's inclusion of a $100-per-month payment schedule in its restitution judgment serves only as another means of ensuring that petitioner fulfilled his restitution obligation in the event he could not pay the full amount before his release from imprisonment. We hold that the District Court's payment schedule does not limit the Secretary's administrative collection authority. The Secretary may properly file an NFTL and levy on property to collect the full unpaid amounts of the RBAs.

II.     Collection of Unpaid Liabilities

Having determined that section 6201(a)(4) grants the Secretary collection authority over criminal restitution orders, we turn to petitioner's challenge of the Secretary's methods of collection. In general, the Secretary has authority to collect taxes imposed by the Code. Sec. 6301. The Code equips the Secretary with certain tools to carry out his collection efforts. Section 6321 provides one such tool that creates a lien in favor of the United States on all property and property rights of a taxpayer liable for Federal tax who neglects or refuses to pay the tax after the Secretary's notice and demand for payment. Section 6320(a)(2) requires the Secretary to provide to the taxpayer written notice of the filing of an NFTL within five business days after the filing. The Secretary may also levy upon the taxpayer's property and rights to property. See sec. 6331(a). Section

6331(d)(1) requires that a taxpayer be given notice before a levy may be made, and section 6330(a) sets out the prelevy notice requirements.

With respect to either an NFTL filing or a proposed levy the taxpayer may request a CDP hearing before an impartial Appeals officer to review the propriety of the collection action. Secs. 6320(b), 6330(b). The officer conducting the hearing must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). The taxpayer may raise at the hearing any relevant issues relating to the unpaid tax or the proposed levy, including (1) appropriate spousal defenses, (2) challenges to the appropriateness of collection actions, and (3) offers of collection alternatives such as an installment agreement. Secs. 6320(c), 6330(c)(2)(A). However, the taxpayer may not challenge the existence or amount of the underlying tax liability unless he or she did not receive a statutory notice of deficiency for that liability or did not otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B). A taxpayer is strictly prohibited from challenging the existence or amount of an underlying tax liability that is related to an order of criminal restitution. Sec. 6201(a)(4)(C).

Following a CDP hearing the officer must determine whether and how to proceed with collection of the liability. The officer's determination must take into

account all issues properly raised by the taxpayer as well as whether any proposed collection action balances the need for the efficient collection of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary.  Sec. 6330(c)(3).

III.    Standard of Review for Collection Actions

Within 30 days of a CDP determination by Appeals a taxpayer may petition this Court for review of that determination.  Sec. 6330(d)(1).  We review the determination de novo where the validity of the underlying tax liability was properly at issue during the hearing.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Otherwise, where the taxpayer's underlying liability is not properly at issue, we review the IRS decision for abuse of discretion only.  Id. Whether an abuse of discretion has occurred depends on whether the exercise of discretion is arbitrary, capricious, or without sound basis in fact or law.  See, e.g., Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Venhuizen v. Commissioner, T.C. Memo. 2012-270, at *12.

Petitioner's underlying tax liability consists of the criminal restitution, interest, and additions to tax that the IRS assessed for 2005 and 2006.  See Klein v. Commissioner, 149 T.C. at 348-349 ("[I]n any CDP proceeding, 'underlying tax liability' refers to the assessed liabilit[y] that the IRS is seeking to collect via the

challenged lien or levy."). Respondent has conceded and abated the statutory interest and additions to tax that he calculated with reference to the restitution amount, and the underlying liability remaining in dispute consists of the summarily assessed criminal restitution. As of April 3, 2016, the combined unpaid balance for the assessed criminal restitution totaled $500,346.90.

In order to dispute his or her underlying tax liability in this Court, the taxpayer must have properly raised that issue at the CDP hearing. See secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see also Giamelli v. Commissioner, 129 T.C. 107, 115 (2007). Under section 6201(a)(4)(C) petitioner was expressly prohibited from challenging the existence or amount of the RBAs for the years in issue during his CDP hearing. The proper time to challenge the amount of his criminal restitution liability would have been when he was sentenced. He did not avail himself of that option. Unlike in Klein, here respondent conceded and abated the assessed interest and additions to tax; therefore we need not review the determination as it relates to those amounts. See Klein v. Commissioner, 149 T.C. at 345-346 (determining de novo review appropriate because petitioners did not have opportunity to challenge interest and additions to tax before their CDP hearing and fully paid restitution amount before the NFTL was filed, leaving as underlying tax liability remaining in dispute only

statutory interest and additions to tax). Respondent represents that he intends to file a corrected NFTL that accurately reflects petitioner's outstanding balance should the Court sustain the FNIL and the filing of the NFTL for the unpaid RBA amount. Thus, petitioner is precluded from raising the issue of his underlying tax liability, and we review respondent's determination sustaining the FNIL and the NFTL filing only for abuse of discretion.

## IV.    Review of CDP Hearing

We agree with respondent that the officer did not abuse his discretion. The officer's case activity record shows that the officer diligently documented his review of petitioner's case, his correspondence, and his conversations with petitioner. The evidence and the notice of determination itself demonstrate that the officer (1) properly verified that the requirements of any applicable law or administrative procedure were met, (2) considered all relevant issues petitioner raised, and (3) considered whether the proposed collection action balanced the need for efficient collection of taxes with petitioner's legitimate concern that the action be no more intrusive than necessary. See sec. 6330(c)(3). The officer also confirmed that collection actions undertaken by the USAO and the District Court's payment schedule had been taken into account.

The Appeals representative did not act arbitrarily, capriciously, or without sound basis in fact or law. See Woodral v. Commissioner, 112 T.C. at 23. Indeed, petitioner did not specify any abuse of discretion in his petition. See Rule 34(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."). Petitioner's only remaining argument is that the underlying tax liability is incorrect even after respondent's concession and abatement of the interest and penalties, and this is an argument that we are unable to consider in a CDP case where the taxpayer's liability is the result of an RBA. We conclude that Appeals did not abuse its discretion in sustaining both the FNIL and the filing of the NFTL.

Petitioner failed to take advantage of the opportunities made available to him through the CDP hearing. During the CDP hearing petitioner was free to propose an installment agreement whereby he would potentially end up paying a relatively small amount per month. He might even have convinced the officer that he could in fact afford to pay no more than the $100 per month set forth in the sentencing court's order. (Petitioner is not limited to the CDP hearing and may propose an installment payment agreement anytime. See sec. 6159). In order to secure a collection alternative like this, however, petitioner needed to do three things: (1) make an actual proposal of a collection alternative, (2) submit financial

information establishing that this was all he could afford to pay, and (3) become current in his tax filing obligations. Petitioner did none of these things.

Instead of making the required factual showings, petitioner took the extreme legal position that the IRS simply could not collect from him. That was a mistake. Petitioner, like any other taxpayer in a CDP case, must affirmatively establish what is his limited ability to pay. He cannot rely on the sentencing court's payment plan to establish that for Federal income tax purposes. In rejecting his position, we are not ruling that the IRS can always levy to collect 100% of the restitution regardless of the taxpayer's financial circumstances.

## V. Conclusion

Petitioner disputes respondent's authority to collect criminal restitution in the absence of a court order. We have held that in adding the provisions of section 6201(a)(4) to the Code, Congress intended to vest the Secretary with independent authority to assess and administratively collect criminal restitution. We have also held that a payment schedule set forth in an order for criminal restitution that is due immediately does not limit the Secretary's authority to collect administratively unpaid amounts of such restitution. Furthermore, the officer's determinations reflected in the notices of determination were not the result of any abuse of discretion. Except with respect to the conceded amounts of interest and penalties,

we sustain the IRS FNIL and NFTL filing insofar as the amounts do not exceed the amount of criminal restitution.

We have considered all of the parties' arguments, and to the extent not discussed above, conclude that those arguments are irrelevant, moot, or without merit. To reflect the foregoing,

<u>An appropriate decision will be entered</u>.